# IN THE UNITED STATES DISTRICT COURT FOR THE
# WESTERN DISTRICT OF MISSOURI
# WESTERN DIVISION

| | |
|---|---|
| THOMAS J. CLARK, | ) |
| Plaintiff, | ) |
| v. | ) Case No. 05-0723-CV-W-NKL |
| JO ANNE B. BARNHART, Commissioner of Social Security, | ) |
| Defendant. | ) |

## ORDER

Pending before the Court is Thomas Clark's ("Clark") Motion for Summary Judgment [Doc. # 8]. Clark seeks judicial review of the Commissioner's denial of his request for disability benefits that he submitted in two applications. The first application was filed under Title II of the Social Security Act, 42 U.S.C. §§ 401, *et seq.* The second application was filed under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381, *et seq.* The Court finds that the Administrative Law Judge's decision was supported by substantial evidence in the record as a whole.

The complete facts and arguments are presented in the parties' briefs and will be duplicated here only to the extent necessary.[1] Following a review of the entire record, the Court affirms the ALJ's decision.

---

[1] Upon review of the record and the law, the Commissioner's position is found to be persuasive. Much of the Commissioner's brief is adopted without quotation designated.

1

**I. Background**

Clark was born in 1954 and he initially alleged that his disability onset date was January 1, 2001. At his hearing, Clark amended his onset date to January 1, 2002. In his applications, Clark alleged disability due to depression and a bipolar disorder.

After an administrative hearing, the ALJ determined that Clark was entitled to a period of disability that began on April 10, 2003, and ceased on June 1, 2004. Thus, the ALJ determined that Clark was not disabled prior to April 10, 2003, or after June 1, 2004. Clark now seeks review of the ALJ's denial of benefits for those time periods.

**A. Medical Overview**

*1. January 1, 2002 to April 9, 2003*

On April 10, 2002, Clark presented to the University of Missouri Health Care Behavioral Health Services ("UMBH") to establish care. Prior to presenting to UMBH, Clark had been treated briefly and recently by a private doctor for depression and was taking 20 mg of Paxil a day. The UMBH physician also diagnosed depression and anxiety but increased Clark's Paxil prescription to 30 mg per day. (Tr. 199.)

On May 6, 2002, Clark followed up at UMBH. Clark reported that the increased dosage of Paxil was helping with his depression and anxiety. The consulting physician maintained the same dosage and noted that Clark was doing well. (Tr. 199.)

Clark followed up at UMBH on November 19, 2002. He reported that he was gaining weight and he was having difficulty sleeping. He also reported ongoing headaches and he thought a tumor might be the source of the headaches. Clark's Paxil

2

dosage was increased to 40 mg per day. A subsequent CT scan of Clark's head was negative. (Tr. 189.)

On December 20, 2002, Clark returned to UMBH. The consultation note states that his Paxil had been increased to 30 mg per day, which is inconsistent with his treatment note from November 2002. Nonetheless, Clark reported that his depression had improved and that he had been tolerating the medication with "no complaints." The evaluator determined that Clark's depression had improved and that he should continue to take Paxil at 30 mg per day. (Tr. 189.)

### 2. *April 10, 2003 to June 1, 2004*[2]

On April 30, 2003, Clark voluntarily admitted himself to Mid-Missouri Mental Health Center ("MMMHC") for a 96-hour hold because of his depression. He reported suicidal thoughts over the course of the prior three weeks, but he denied suicidal ideation at the time of his admission. During his stay at MMMHC, Clark's affect improved and he was friendly with MMMHC staff. Clark was discharged on May 5, 2003, with a diagnosis of major depression disorder - recurrent type. He was prescribed upon discharge Aspirin (80 mg per day), Atorvastatin (20 mg per day), Hydrochlorothiazide (25 mg per day), and Paxil (60 mg per day). (Tr. 172-73.)

On May 13, 2003, Clark presented to UMBH for a follow-up visit and he stated that he no longer intended to kill himself. He did report that he was continuing to have

---

[2]Clark has already been awarded benefits for this time period. The Court includes this section only to present a complete picture of Clark's impairments.

3

mood swings. UMBH maintained the same prescriptions that Clark was given at his discharge from MMMHC. (Tr. 178.)

On May 23, 2003, Clark presented to UMBH for a screening evaluation. The clinician assessed major depressive disorder - recurrent and personality disorder. The clinician scheduled an appointment with Nemesio E.S. Gutierrez, M.D., a psychiatrist at UMBH, for July 2003. The clinician also noted that Clark was in the process of applying for disability benefits. (Tr. 192-97.)

On May 27, 2003, Clark again voluntarily admitted himself to MMMHC for depression and suicidal ideation. Clark was again placed on Paxil (60 mg per day), but it was changed later to 40 mg. Clark was also placed on Wellbutrin (100 mg per day) for his depression. During his stay at MMMHC, Clark's "depressive symptoms decreased and he had a brighter affect, appeared more motivated and optimistic about the future." (Tr. 147.) Clark denied any further suicidal ideation and he was discharged on June 2, 2003. He was prescribed Paxil (40 mg per day), Wellbutrin (100 mg per day), and other medications. (Tr. 146-47.)

On June 5, 2003, Clark presented again to UMBH with various symptoms of depression. (Tr. 183.) He again reported to UMBH for follow-up on June 13, 2003, and the evaluator noted that Clark's "depression appears improved." (Tr. 178.)

On July 1, 2003, Clark had an appointment with Dr. Gutierrez for an initial psychiatric evaluation. Dr. Gutierrez diagnosed Clark with major depressive disorder - recurrent. He continued Clark's prescriptions of Wellbutrin and Paxil and he

4

recommended individual counseling for Clark's anger. (Tr. 174-77.)

On October 2, 2003, Clark was again voluntarily admitted to MMMHC with complaints of suicidal thoughts. At discharge, on October 7, Clark was diagnosed with major depressive disorder - recurrent and he was assessed a GAF score of 45/55, which were indicative of serious or moderate symptoms. He continued his prescriptions of Wellbutrin and Paxil. (Tr. 216-17.)

On November 3, 2003, Clark presented to Alice M. Christensen, Ph.D., a staff psychologist at Veterans Administration Heartland West ("VA"). Clark was not suicidal at his appointment and he met with Dr. Christensen to establish a long-term care plan. Regarding his goals, Clark stated that his goal was to obtain disability benefits and he stated, "I feel much better." (Tr. 227.) He described his depression and anxiety as "lessened." (Tr. 227.) According to Dr. Christensen's notes, "Clark described himself as feeling better. He noted that he is less irritable and gets along with his family much better. He noted he continues to experience some depression, and he does not feel able to be employed." (Tr. 227.) Dr. Christensen assessed major depressive disorder - recurrent and she assigned Clark a GAF of 35, which was indicative of a major impairment. (Tr. 224-28.)

On December 30, 2003, Clark presented to Jeffrey R Thiele, M.D., at VA for follow up. Clark reported that he "continue[d] to do better with regard to both his mood and his level of anger. [Clark said] he now will get irritated with things in a normal sense, and not get angry." (Tr. 229.) Dr. Thiele noted that Clark was looking for

5

employment, but he was unable to find any, and that Clark was waiting to hear about his disability claim. Dr. Thiele assessed major depressive disorder - recurrent, and advised Clark to establish care with a primary care physician. (Tr. 229-30.)

On March 8, 2004, Clark again presented to VA to establish care with a primary care physician. (Tr. 231-32.) In March 2004, Clark denied that he had any acute medical problems and his visit was solely for the purpose of establishing an ongoing relationship with a primary care physician.

On June 1, 2004, Clark presented to Frances A. Spickerman, Ph.D., for a psychological consultation at the request of the Commissioner. Dr. Spickerman observed that Clark's psychomotor activity, speech, and mood appeared to be normal, and he did not appear to be in any kind of psychological distress. Dr. Spickerman administered intelligence tests to Clark and he scored in the high borderline range for intellectual functioning. Dr. Spickerman noted that Clark was oriented to several details, including the date, day of the week, times, and what he had heard in the news. During the session, Clark reported feeling helpless and hopeless "sometimes" but he denied suicidal thoughts. Clark testified that he was looking for a job, but he was upset because he could not find employment. He did state that he occasionally had sleep problems, but that he also had a recurring dream about killing his former wife.

Dr. Spickerman concluded that Clark's depression was under control and that his medication regimen was working for him. He diagnosed Clark with major depression in remission and borderline intellectual functioning. (Tr. 235.)

### 3. *Treatments after June 2, 2004*

Clark presents no medical evidence after his consultation with Dr. Spickerman on June 1, 2004.

**B.     The Hearing**

At the hearing, Clark testified about his past work experience and he stated that he had quit his previous jobs because of his inability to get along with others. Regarding his current functioning level, Clark testified that he no longer gets as angry as he used to, but that he still experiences mood swings and sleeping problems. (Tr. 36.) He also testified about experiencing difficulty with remembering dates and answering questions. (Tr. 44.) Clark stated that he did not feel that his symptoms had improved because he continued to have feelings of depression, including feelings of uselessness, low energy, and concentration problems, but he denied having suicidal tendencies. (Tr. 53-54.) He did state that his medications "sometimes" help him. (Tr. 36.)

Regarding his daily activities, Clark stated that he sometimes babysits his son for four hours a day and he does things around the house for his mother. (Tr. 37.) He also testified that he sometimes gets his children ready for school and prepares their clothes. (Tr. 38) He stated that he uses the computer for about an hour a day (Tr. 39) and he "sometimes" goes to church, usually about two Sundays a month. (Tr. 41.) Regarding babysitting, Clark testified that he does not lose his temper with his sons, even if he does not get a break from them. (Tr. 45.)

Anita Clark, Clark's wife, also testified at the hearing. She testified that Clark had

7

quit several jobs because of his temper, but she denied that he had ever been fired because of his anger. (Tr. 62.) She testified that Clark did okay with his medications and if she reduced his stress level by managing the children. (Tr. 65-66.)

### C. The ALJ's Opinion

The ALJ determined that Clark's pre-April 2003 symptoms of depression did not rise to the level of a disabling impairment because he had sought only conservative treatment and his symptoms were not severe. Similarly, the ALJ found that by June 2004 Clark's symptoms had progressively improved through the maintenance of his medication regimen. Based on his findings, the ALJ determined that Clark could perform his past relevant work history as an unskilled janitor as of the date of the hearing in March 2004.

## II. Discussion

Clark challenges the ALJ's findings because he claims the ALJ improperly found that his testimony was not credible and the ALJ improperly concluded that he could perform his past relevant work as an unskilled janitor.

### A. Clark's Credibility

Clark challenges the ALJ's credibility determination, but the Court cannot find from the ALJ's opinion where he specifically found that Clark's testimony was not credible. To the contrary, the ALJ concluded that "[t]he testimony is generally credible" but denied Clark benefits based on the objective evidence. *See* ALJ Opinion (Tr. 17) at ¶ 4. Thus, it appears the ALJ's conclusion was based on the objective evidence alone rather than a result of finding that Clark was not credible.

8

The objective medical evidence prior to April 10, 2003, and after June 1, 2004, support the ALJ's finding because they do not reflect a claimant who is disabled. Prior to April 2003, Clark was treated only four times for depression over a fifteen-month period, with a six-month gap between the two appointments in May 2002 and November 2002. All of the treatment notes from that time period reflect that Clark was given a consistent dosage of Paxil and that he reported that he was doing better with his medication. In fact, in December 2002--Clark's last treatment before April 2003--he reported that his depression had improved and that he had been tolerating the medication with "no complaints." The evaluator in December 2002 determined that Clark's depression had improved and that he should continue to take Paxil at 30 mg per day. (Tr. 189.) Thus, the objective medical evidence prior to April 2003 supports the ALJ's finding that he was not disabled during that time period.

Similarly, the ALJ's determination that Clark was not disabled after June 2004 is not contrary to the evidence in the record. Clark was last hospitalized in October 2003. In November and December 2003, Clark presented to the VA for follow-up treatment and he described to Drs. Christensen and Thiele that he was doing better and that his mood had improved. (Tr. 227-30.) Although he had a GAF of 35 in November 2003, there is no evidence that Clark sought medical attention for his depression after December 2003, thereby suggesting that his condition was well-managed with medication. Clark's next consultation with a physician was in June 2004 but this was at the request of the Commissioner--Clark did not seek out the treatment. The June 2004 consultation

9

revealed that Clark's depression was responding well to medication and that, on whole, his condition had improved. Thus, the absence of necessary medical attention for over six months, as well as the opinions formed by Dr. Spickerman in June 2004, support the ALJ's conclusion that Clark's condition no longer precluded him from employment in June 2004.

Based on the foregoing, the ALJ did not err when he concluded that the objective medical evidence did not support Clark's contention that he was disabled prior to April 2003 or after June 2004.

Clark's testimony at the hearing also indicated that his condition had markedly improved. He testified that he was not suicidal and that his anger management problems had largely subsided. Although Clark testified that he still experiences some symptoms of depression, he also stated that his medication "sometimes" helped him. (Tr. 36.) Thus, even Clark's own testimony at the hearing in March 2004 demonstrates that his condition was improving with medication. Anita Clark's testimony buttressed her husband's testimony in that she also testified that his medication was helping him cope. (Tr. 65-66.)

Clark also claims the ALJ erred when he did not discuss his daily activities, but the ALJ's opinion clearly recounts Clark's testimony about his daily activities. *See* ALJ Opinion (Tr. 15-17.) Thus, the ALJ did consider Clark's daily activities in the context of determining whether Clark was disabled and there is no evidence to undermine or dispute the ALJ's findings regarding Clark's daily activities.

Clark also claims the ALJ erred by not considering his past earnings. Again, there

is no evidence that the ALJ made any credibility determination and, as a result, there is no evidence that a review of Clark's earnings history was necessary.  However, even if the ALJ had conducted such a review, it would not have assisted Clark's claim for benefits.  Beginning in 1970 and through 2002, Clark had never earned more than nine thousand dollars in any one year.  (Tr. 87.)  His earnings overview reflects that he did not have any income in 1972 or for a three-year period beginning in 1984.  (Tr. 87.)  More recently, Clark went from earning only a few hundred dollars a year in the late 1990s to earning as much as seven thousand dollars in 2001.  (Tr. 87.)  In 2002, he again dropped dramatically to earning only nineteen hundred dollars.  (Tr. 87.)  At best, Clark's work history demonstrates low earnings and inconsistent degrees of work, neither of which support his credibility.  *See Comstock v. Chater*, 91 F.3d 1143, 1147 (8th Cir. 1996) (claimant's fairly low earnings and significant breaks in employment undermined credibility); *Pena v. Chater*, 76 F.3d 906, 908 (8th Cir. 1996) (sporadic work history failed to support claimant's credibility).

Based on the foregoing, the Court finds that the ALJ's credibility determination, to the extent such a determination was made, is supported by substantial evidence in the record.

**II.    Clark's Past Relevant Work**

Clark challenges the ALJ's determination that he could perform his past relevant work as a janitor.  The ALJ found that Clark could perform his past work as a janitor because he had the capacity to perform unskilled work.  (Tr. 17.)

Clark alleges that he met his burden of proving that he could not return to his past relevant work because "he had tried to return and was told he would not be hired or never received a call back." *See* Clark's Motion [Doc. # 8] at p. 18 and (Tr. 37). Clark's argument fails because under the Social Security regulations, the test for disability is not whether an individual will be hired for a job, but whether the claimant has the physical or mental capacity to perform one. *See* 20 C.F.R. §§ 404.1505; 416.905. Moreover, disability cannot be established due to an inability to be hired for a particular job or because of specific hiring practices of employers. *See Thomas v. Sullivan*, 928 F.2d 255, 261 (8th Cir. 1991) (ability to get hired not to be considered); *Cronkhite v. Sullivan*, 935 F.2d 133, 134-35 (8th Cir. 1991) (test is not whether claimant can get hired, but whether the claimant has the capacity to adequately perform the job).

In this case, Clark failed to meet his burden to show that he could not perform his past unskilled work as a janitor. While Clark may not be able to get hired as a janitor, that is not the standard for determining whether Clark has the capacity to perform the job. Therefore, the ALJ's determination is supported by substantial evidence in the record.

### III. Conclusion

An examination of the ALJ's decision reveals that it is supported by substantial evidence on the record as a whole. Accordingly, it is hereby

ORDERED that Clark's Motion for Summary Judgment [Doc. # 8] is DENIED. The decision of the Commissioner is affirmed.

12

s/ Nanette K. Laughrey
　　　　　　　　　　　　　　　　　　　　NANETTE K. LAUGHREY
　　　　　　　　　　　　　　　　　　　　United States District Judge

DATE: March 23, 2006
Kansas City, Missouri